COLCHESTER STATE BANK, Plaintiff-Appellee, v. GERALD R. McIN-TYRE, Defendant-Appellant.

Third District   No. 3—90—0902

Opinion filed August 23, 1991.

Johnson, Frank, Frederick & Walsh, of Urbana (Stephen R. Frank, of counsel), for appellant.

March & McMillan, of Macomb (John D. McMillan, of counsel), for appellee.

JUSTICE HAASE delivered the opinion of the court:

The plaintiff, Colchester State Bank, brought this action against the defendant, Gerald R. McIntyre, to recover damages incurred by the Bank as a result of the defendant allegedly making loans greater than the legal lending limit allowed by section 32 of the Illinois Banking Act (Ill. Rev. Stat. 1983, ch. 17, par. 339). The trial court granted the plaintiff's motion for summary judgment. The defendant appeals.

■ The plaintiff's three-count complaint was based on sections 32 and 39 of the Illinois Banking Act (Act) (Ill. Rev. Stat. 1981, ch. 17, pars. 339, 349). Section 39 of the Act provided that every director or officer of any State bank who violates or participates in, or assents to a violation of section 32 shall be personally liable for all the damages the bank sustained as a consequence of such violation. Section 32 of the Act provided that "[t]he liabilities to any state bank of any person for money borrowed *** shall at no time exceed fifteen percent of the amount of capital of such bank, and fifteen percent of its surplus." Ill. Rev. Stat. 1981, ch. 17, par. 339.

According to the plaintiff's affidavits, the combined capital and surplus of the bank was $220,000. Thus, the plaintiff bank's legal lending limit for the purposes of section 32 of the Act was $33,000.

The record reveals that the defendant was elected to the board of directors of the plaintiff bank on March 20, 1979. On June 8, 1982, he was elected the bank's president and chairman of the board.

From December 18, 1980, through April 17, 1981, Affiliated Printing Co. (Affiliated) executed a series of promissory notes to the plaintiff totaling $17,500. The defendant and Phillip Meisinger were each 10% shareholders in the company. On July 6, 1981, Meisinger borrowed $17,000 from the plaintiff. On August 10, 1981, Affiliated executed a promissory note for $75,000 in favor of the plaintiff, which was due February 6, 1982. On August 13, 1981, Middletown State Bank (Middletown) and the plaintiff entered into a participation agreement regarding the $75,000 loan to Affiliated. Middletown's portion of the agreement was $50,000 and the plaintiff's portion was $25,000. On August 20, 1981, Affiliated used the proceeds from the $75,000 loan to repay the principal accrued on the previously executed notes.

On June 30, 1982, Meisinger, as chairman of the board of Affiliated and individually, executed a promissory note for $84,644.76 to the plaintiff. At that time, Meisinger already owed the Bank $9,548.63 from the $17,000 loan. On September 27, 1982, Affiliated

applied the proceeds from the $84,644.76 loan to the outstanding indebtedness on the $75,000 loan that it had secured on August 10, 1981.

On June 27, 1982, the plaintiff loaned Larry and Carol Baumgardner $160,000. At that time, the plaintiff Bank entered into participation agreements with Illinois National Bank of Springfield (INBS) and Middletown. Participation was as follows: INBS $88,500, Middletown $38,500, and the plaintiff $33,000. The participation certificate signed by INBS and the plaintiff did not provide for a *pro rata* participation. Rather, it provided that any payments received by the plaintiff would be applied toward the reduction of the participation by INBS.

On May 31, 1983, the plaintiff loaned the Baumgardners an additional $23,000. As a result, an additional participation agreement was executed by the plaintiff and INBS. INBS participated to the extent of $20,340 and the plaintiff to the extent of $2,660. The participation agreement did not provide for a *pro rata* participation.

On July 8, 1983, the Baumgardners acquired a new loan from the plaintiff for $150,000. This loan was made to rewrite the previous $160,000 loan and was payable upon demand. It reflected that $10,000 had been paid on the principal of the previous loan and that the accrued interest had been paid through June 26, 1983. The new loan document further showed that the defendant was the bank officer responsible for making the loan.

The defendant obtained a participation agreement from INBS regarding the $150,000 renewal loan. INBS agreed to participate to the extent of $82,969. No other participation agreements were obtained, leaving the plaintiff the sole lender of $67,031 of the $150,000 loan.

According to the defendant, Middletown orally agreed to participate in the $150,000 loan. Middletown, however, refused to execute such an agreement. In that regard, a Menard County circuit court judge found that Middletown refused to participate in the loan.

Thereafter, the Baumgardner loans were never recovered. The plaintiff, however, made numerous efforts to mitigate its damages and succeeded in limiting them to $43,907.29.

The trial court granted summary judgment in favor of the plaintiff on all three counts of its complaint. Count I related to the Baumgardner loan, and the trial court entered judgment thereon, awarding the plaintiff $43,907.29, plus interest and costs of the suit. Counts II and III of the plaintiff's complaint concerned the loans to Affiliated and Meisinger. Based on counts II and III, the court

awarded the plaintiff damages of $177,441.70, plus interest and costs of the suit.

On appeal, the defendant argues that the trial court erred in granting the plaintiff's motion for summary judgment. In that regard, he initially contends that section 32 of the Act should be interpreted to provide that a bank president must knowingly or negligently violate the statute before liability may be imposed.

■ At the outset, we note that this appears to be an issue of first impression in Illinois. Section 39 of the Act provides that a director may be held personally liable if he violates, participates in, or assents to a violation of section 32 of the Act. The statute does not provide that the violation must be knowingly or negligently done. It merely provides that the director have some personal involvement in the violation. If the legislature had intended that liability rest on a knowing or negligent violation, it would have stated so. Since the Illinois Banking Act does not expressly require a "knowing" violation, it creates virtual strict liability. All that section 39 requires for liability to attach is for there to have been a violation, participation in a violation, or assent to a violation of section 32. The legislature clearly intended sections 32 and 39 of the Act be strictly enforced to give effect to the long-standing policy that officers and directors of banks should not approve overline loans.

■ Here, we are not confronted with a situation in which a director had no personal involvement with overline loans. Rather, the defendant in the present case clearly participated in a violation of the Act. Accordingly, we find the defendant's argument unpersuasive.

Regarding the Baumgardner loans, the defendant contends that they were not excessive because the plaintiff did not allege that the initial loan made by the previous director to the Baumgardners was excessive.

We disagree. The initial loan did not exceed the legal limit. It was only when the defendant renewed the initial loan on July 8, 1983, without a sufficient participation agreement that the loan became excessive. The defendant argues that the court should not have relied on the fact that a previous court had found that Middletown refused to participate in the loan. We find, however, that even if there was an oral agreement to participate as the defendant suggests, it would still not relieve the defendant from liability under the Act. The defendant cannot rely on an alleged participation agreement that has not been executed.

Regarding the Affiliated and Meisinger loans, the defendant argues that the $84,644.76 loan was a renewal of credit already granted

to Affiliated and that Meisinger's signature put the Bank in a stronger legal position. He contends that since his actions were an aid to the Bank he should not be held liable under the Act.

We find that the defendant's argument is without merit. The Act prohibits bank presidents from making overline loans even if their motive is to work out previously existing bad loans. Moreover, the defendant's argument fails to note that the previous $75,000 loan involved a participation agreement which kept it under the plaintiff's legal lending limit. However, the second loan for $84,644.76 did not contain such an agreement. Thus, unlike the initial loan, the $84,644.76 loan vastly exceeded the $33,000 legal lending limit.

Accordingly, the judgment of the circuit court of McDonough County is affirmed.

Affirmed.

BARRY and GORMAN, JJ., concur.